### In re JAPANESE ELECTRONIC PRODUCTS ANTITRUST LITIGATION, Zenith Radio Corporation and National Union Electric Corporation, Appellants.

Nos. 80–2080, 81–2331 to 81–2333.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Oct. 31, 1986.

Decided Dec. 12, 1986.

---

Edwin P. Rome, William H. Roberts, Arnold I. Kalman, Blank, Rome, Comisky & McCauley, Philadelphia, Pa. (Philip J. Curtis, John Borst, Jr., Zenith Radio Corp., Glenview, Ill., of counsel), for Zenith Radio Corp. and Nat. Union Elec. Corp.

Henry T. Reath, Terry R. Broderick, Frank A. Luchak, Judith N. Renzulli, Duane, Morris & Heckscher, Philadelphia, Pa., John T. Dolan, Arnold B. Calmann, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., Hoken S. Seki, Seki & Jarvis, New York City, Donald F. Turner, Wilmer, Cutler & Pickering, Washington, D.C., for Mitsubishi Elec. Corp. and Mitsubishi Elec. Sales America, Inc.

Charles F. Schirmeister, Peter C. Williams, Reid & Priest, New York City, Christopher Scott D'Angelo, Montgomery McCracken Walker & Rhoads Philadelphia, Pa., for Mitsubishi Corp. and Mitsubishi Intern. Corp.

James S. Morris, Michael S. Press, Whitman & Ransom, Kevin R. Keating, Windels, Marx, Davies & Ives New York City, Charles J. Bloom, Kleinbard, Bell & Brecker, Philadelphia, Pa., for Sanyo Elec. Co., Ltd.; Sanyo Elec. Trading Co., Ltd., Sanyo Elec. Inc., and Sanyo Mfg. Corp.

Ira M. Millstein, A. Paul Victor, Jeffrey L. Kessler, Martin S. Hyman, Jeffrey P. Bialos, Debra J. Pearlstein, Weil, Gotshal & Manges, New York City, Raymond T. Cullen, Morgan Lewis & Bockius, Philadelphia, Pa., for Matsushita Elec. Indus. Co., Ltd., Matsushita Elec. Corp. of America, Matsushita Elec. Trading Co., Ltd., and Matsushita Electronics Corp.

Donald J. Zoeller, John L. Altieri, Jr., Harold G. Levison, Mudge Rose Guthrie Alexander & Ferdon, New York City, Patrick T. Ryan, Drinker Biddle & Reath, Philadelphia, Pa., for Toshiba Corp. and Toshiba America, Inc.

Carl W. Schwarz, Michael E. Friedlander, William H. Barrett, Stephen P. Murphy, Paul J. Pantano, Jr., Metzger Shadyac & Schwarz, Lawrence R. Walders, Graham & James, Washington, D.C., Charles J. Bloom, Kleinbard, Bell & Brecker, Philadelphia, Pa., for Hitachi, Ltd., Hitachi Kaden Hanbai Kabushiki Kaisha, and Hitachi Sales Corp. of America.

Jiro Murase, Peter J. Gartland, Gene Y. Matsuo, Peter A. Dankin, Lance Gotthoffer, Wender Murase & White, New York City, Matthew J. Broderick, Dechert Price & Rhoads, Philadelphia, Pa., for Sharp Corp. and Sharp Electronics Corp.

Before: SEITZ, GIBBONS, and MESKILL *, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This matter is before us on remand from the Supreme Court. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The plaintiffs, American manufacturers of consumer electronic products, sued Japanese manufacturers of such products, alleging antitrust and antidumping violations of American law. The district court granted summary judgment in favor of all defendants on all claims. *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 494 F.Supp. 1190 (E.D.Pa.1980) (granting summary judgment on the 1916 Antidumping Act claims), 513 F.Supp. 1100 (E.D.Pa.1981) (granting summary judgment on the conspiracy claims). Exercising the plenary review appropriate for summary judgment cases, this court in two separate opinions affirmed in part and reversed in part. *In re Japanese Electronic Products,* 723 F.2d 238, 723 F.2d 319 (3d Cir. 1983). The defendants in whose favor summary judgments were not affirmed petitioned for certiorari. The Supreme Court granted certiorari on the antitrust segment of the case, which involved claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (1982). The Supreme Court judgment, dated March 26, 1986, provides:

> **THIS CAUSE** came on to be heard on the transcript of the record from the [United States Court of Appeals for the Third Circuit] and was argued by counsel.
>
> **ON CONSIDERATION WHEREOF,** it is ordered and adjudged by the Court that the judgment of the above court in this cause is reversed with costs, and that this cause is remanded to the United States Court of Appeals for the Third Circuit for further proceedings in conformity with the opinion of this Court.

Although we dealt with the Sherman Act claims and the claims under the Antidumping Act of 1916, 15 U.S.C. § 72 (1982), in two separate opinions, this court entered a single judgment. This judgment has now been reversed and remanded by the Supreme Court, with a direction that "this cause" be remanded for further proceedings in conformity with its opinion. Thus it appears that we are directed to reconsider not only the Sherman Act claims, but the entire case. Complicating the picture further, the opinion of the Supreme Court provides:

> On remand, the Court of Appeals is free to consider whether there is other evidence that is sufficiently unambiguous to permit a trier of fact to find that petitioners conspired to price predatorily for two decades despite the absence of any apparent motive to do so.

106 S.Ct. at 1362. This language also appears to suggest that we must reconsider the Antidumping Act claims on which the Supreme Court did not grant certiorari, as well as the Sherman Act claims which it did review. We find this suggestion to be somewhat confusing since the Supreme Court had the very same summary judgment record before it that this court had considered, and does exercise the same plenary review of the propriety of the district court summary judgment.

Faced with a seemingly ambiguous direction, this court directed the parties to file briefs addressing: a) the appropriate disposition of the case in light of the Supreme Court direction on remand; b) whether the law with respect to permissible inferences of concert of action announced by the Court for Sherman Act claims applies to concert of action issues arising under other statutes, such as the Antidumping Act of 1916; and c) what disposition should be made of the Antidumping Act claims if these inferences do apply. We now conclude: (1) that the Supreme Court's direction that this court may consider "other evidence" means that other evidence already in the summary judgment record may be considered; (2) that there is no evidence in the record supporting an inference of a predatory pricing conspiracy among the defendants in the American market other than that which the Supreme Court has already held to be legally insufficient; and (3) that the Supreme Court's

---

* Hon. Thomas J. Meskill, United States Circuit Judge for the Second Circuit, sitting by designation.

holding that there is insufficient evidence of a conspiracy to price predatorily in the American market requires the affirmance of the summary judgment on the Antidumping Act claim.

██ The conspiracy on which the plaintiffs rely in support of their Sherman Act claims is a horizontal conspiracy among Japanese manufacturers of consumer electronic products to maintain artificially high prices in the Japanese home market to help support sales at low prices in the American export market, thereby injuring American manufacturers competing with them in the latter market. When this court first reviewed the summary judgment record, we concluded it permitted findings that there are high entry barriers in the Japanese home market; that the Japanese manufacturers have higher fixed costs and higher debt-equity ratios than their American counterparts; that the Japanese manufacturers, individually and in the aggregate, created higher plant capacities than could reasonably be absorbed by the Japanese home market, thereby creating an incentive to dispose of the excess capacity in a market outside Japan. 723 F.2d at 238. We also concluded that there is direct and circumstantial evidence of an agreement to stabilize Japanese home market prices to realize the profits needed to support sales at low prices in the United States. *Id.* at 309. Despite these conclusions, the Supreme Court conclusively held that the defendants "had no motive to enter into the alleged conspiracy." 106 S.Ct. at 1360. In addition, this court previously referred to evidence that the defendants' export sales generally were at prices which produced losses, often as high as twenty-five percent on sales. 723 F.2d at 311. We also noted that the five-company rule permitted an inference that allocation of customers in the United States, combined with price fixing in Japan, was intended to concentrate the effects of dumping upon American competitors while eliminating competition among the Japanese manufacturers in either market. *Id.* The Supreme Court, however, conclusively held that "in light of the absence of any rational motive to conspire, neither [defendants'] pricing practices, nor their conduct in the Japanese market, nor their agreements respecting prices and distribution in the American market, suffice to create a 'genuine issue for tri-

al.'" 106 S.Ct. at 1362. These holdings are the law of the case and are binding on this court. Consequently, the plaintiffs are now foreclosed from arguing that there was a motive to enter into the alleged conspiracy. They are also foreclosed from arguing that the direct and circumstantial evidence to which this court referred in its prior opinion is sufficient to overcome a motion for summary judgment. What is left open by the Supreme Court's remand, therefore, can only be a consideration of evidence other than pricing practices in the American market, conduct in the Japanese market, and agreements respecting customer allocation in the American market. Such evidence, moreover, must suffice to overcome the law of the case that there was no motive to conspire.

Plaintiffs' brief on remand essentially argues that the Supreme Court misunderstood their case when it assumed that their conspiracy theory was an alleged agreement to sell in the United States below cost—a conspiracy the Supreme Court deemed economically senseless. Instead, plaintiffs now contend that the conspiracy was one to sell in the American market at below the competitive market price, but above marginal cost. Manufacturers with excess capacity and high fixed costs, plaintiffs contend, have a rational motive to enter into such a conspiracy. This argument, however, is foreclosed because the Supreme Court has already addressed it. Explaining its use of the term predatory pricing, the Court observed:

> Throughout this opinion, we refer to the asserted conspiracy as one to price "predatorily." This term has been used chiefly in cases in which a single firm, having a dominant share of the relevant market, cuts its prices in order to force competitors out of the market, or perhaps to deter potential entrants from coming in.... In such cases, "predatory pricing" means pricing below some appropriate measure of cost.
>
> There is a good deal of debate, both in the cases and in the law reviews, about what "cost" is relevant in such cases. We need not resolve this debate here, because ... this is a Sherman Act § 1 case. For purposes of this case, it is enough to note that respondents have not suffered an antitrust injury unless petitioners conspired to drive respon-

dents out of the relevant markets by (i) pricing below the level necessary to sell their products, or (ii) pricing below some appropriate measure of cost. An agreement without these features would either leave respondents in the same position as would market forces or would actually benefit respondents by raising market prices. Respondents therefore may not complain of conspiracies that, for example, set maximum prices above market levels, or that set minimum prices at *any* level.

106 S.Ct. at 1355 n. 8 (citations omitted). It is clear, therefore, that the Supreme Court understood the conspiracy theory to be one to price predatorily; that is, at a level which would injure the plaintiffs. Thus this court is not free to reject the Supreme Court's holding that there was no motive to conspire to fix low prices in the American market. Moreover, this court is not free to disregard the law of the case that "[e]vidence that tends to support any of [the] collateral conspiracies thus say little, if anything, about the existence of a conspiracy to charge *below market prices* in the American market over a period of two decades." 106 S.Ct. at 1361 (emphasis added).

Plaintiffs further argue that because the Supreme Court did not review their Antidumping Act claim, the Court failed to appreciate the full significance of the defendants' conduct in the Japanese market. They point to evidence tending to suggest a horizontal conspiracy to maintain supracompetitive prices in Japan, a market where the defendants are protected from competition by high entry barriers. The profits derived conspiratorily in the Japanese market, plaintiffs urge, permitted sales in the United States at dumping prices. However this court again is foreclosed by the Supreme Court's opinion. The Supreme Court stated flatly that "[e]vidence that petitioners conspired to raise prices in Japan provides little, if any, support for respondents' claims: a conspiracy to increase profits in one market does not tend to show a conspiracy to sustain losses in another." 106 S.Ct. at 1361. The Court held, moreover, that defendants pricing practices did not suffice to create a genuine issue for trial. *Id.* at 1362. This reference plainly was to prices charged in the American market. The Supreme Court obviously was aware that these prices

could be found to have been dumping prices.

Plaintiffs only real effort to refer to "other evidence" is to two expert reports, not previously considered, tending to explain why the defendants would have had a plausible motive to engage in the alleged conspiracy. These reports consist not of new evidentiary materials, but of explanations based upon the existing record. They amount to no more than an argument that the Supreme Court majority erred in its conclusion that no factfinder could draw an inference of conspiracy to price predatorily. We are not free to accept such an argument at this stage of the case, even from an expert. To the extent that the expert opinions might in themselves be considered evidentiary, they cannot be considered "other evidence" within the meaning of the Supreme Court's mandate. The case was not remanded to give the plaintiffs an opportunity to create a new summary judgment record.

We conclude, therefore, that there is no evidence other than that upon which we previously relied when we concluded that there were material fact issues regarding the existence of a predatory pricing conspiracy in the American market. The Supreme Court has already held this evidence is legally insufficient. Therefore the summary judgment on the Sherman Act claims must be affirmed.

■ Since it is now the law of the case that there is insufficient evidence of a conspiracy to price predatorily in the American market, it is necessary to reconsider our disposition of the Antidumping Act claim. As we explained in our earlier opinion, the Antidumping Act of 1916 includes as a substantive element in the cause of action a proviso that the acts complained of "be done with the intent of destroying or injuring an industry in the United States." 15 U.S.C. § 72 (1982). *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 319, 322 (3d Cir.1983). The plaintiffs assert that the Japanese manufacturers individually and collectively have engaged in illegal dumping. With respect to the conspiracy claims, we earlier held "that the evidence supporting plaintiffs' theory that defendants entered into the alleged conspiracy also creates a genuine issue of fact as to whether defendants agreed to dump [consumer electronic products] on the Unit-

ed States market with the specific intent to destroy or injure an industry in the United States." *Id.* at 328. Since the Sherman Act conspiracy charge failed in the Supreme Court, our holding on the Antidumping Act conspiracy claim must fail with it. The Antidumping Act claims against individual Japanese manufacturers are equally vulnerable because we relied, in reversing summary judgment on those claims, on the evidence tending to show that the individual manufacturers joined in a conspiracy to sell in the American market at predatory prices. 723 F.2d at 329. There is no other evidence tending to show that any of the defendants still in the case dumped consumer electronic products with the required intent to injure or to destroy a United States industry.

The summary judgment in favor of each defendant will therefore be affirmed in all respects.