Mark H. JORDAN, Plaintiff,

v.

The RETIREMENT COMMITTEE OF the
CONTRIBUTORY DEFINED BENE-
FIT RETIREMENT PLAN AT RENS-
SELAER POLYTECHNIC INSTITUTE,
Defendants.

No. 93–CV–1405.

United States District Court,
N.D. New York.

Feb. 5, 1995.

Herzog, Engstrom & Koplovitz Law Firm, Albany, NY, for plaintiff (Frederick Galt, of counsel).

Bond, Schoeneck & King Law Firm, Albany, NY, for defendants (Richard C. Heffern, of counsel).

## MEMORANDUM DECISION AND ORDER

McAVOY, Chief Judge.

Plaintiff Mark H. Jordan filed this action in the small claims part of Troy City Court, Troy, New York, on October 14, 1993. Defendant Retirement Committee of the Contributory Retirement Plan at Rensselaer Polytechnic Institute removed the action by notice of removal filed November 3, 1993. Pursuant to an order by Magistrate Judge Ralph W. Smith the parties have filed with the Court a Stipulated Statement of Facts and cross-motions for summary judgment.

## I. BACKGROUND

Plaintiff retired from Rensselaer Polytechnic Institute (hereinafter RPI) as of July 1, 1977 and is a member of RPI's Contributory Retirement Plan (hereinafter CRP). In mid-May 1991 plaintiff claimed that certain benefit increases received since his retirement had been miscalculated resulting in underpayments to him since 1980. On December 12, 1991, the defendant CRP Retirement Committee granted plaintiff's claim and advised him that it would undertake to recalculate his benefit (and the benefit of all similarly situated retirees), and award him any underpayments plus interest "as soon as administratively feasible." (Stip.Stmnt. of Facts, Ex. 6). On July 23, 1992 plaintiff received a check for $689.45 representing $116.28 in prior underpayments (after certain prior overpayments not relevant to this action were netted out), and $573.17 in interest. That interest payment reflects the Retirement Committee's decision to pay interest at the actual annual rate of return earned on plan assets during the relevant period.

(Stip.Stmnt. of Facts, Ex. 11). Interest was calculated at that rate from 1980, when the plaintiff was first underpaid, to July of 1992, the date of actual payment to plaintiff of the underpaid benefits and interest.

On September 24 and at plaintiff's request the Retirement Committee supplied plaintiff with a chart reflecting the annual rate of return on plan assets for the relevant period. (Stip.Stmnt. of Facts, Ex. 8). While the rate of return fluctuated widely from 1980 to 1991 (from a low of 0.45% in 1981 to a high of 31.28% in 1991) plan assets reflected a positive return in all years except 1992. In 1992, the rate of return from which plaintiff's interest was calculated (for the period of January, 1992 to July 1992, when plaintiff received his award) was—1.64%.[1]

On October 20, 1992 plaintiff proffered a claim to the Retirement Committee for underpayment of interest on the recalculated benefits "conceded by the Committee on December 12, 1991 and actually paid on July 23, 1992." (Stip.Stmnt. of Facts, Ex. 10.) The Committee denied those interest claims on December 8, 1992. (Stip.Stmnt. of Facts, Ex. 11.) On February 3, 1993 plaintiff filed a notice of appeal as to that denial. (Stip.Stmnt. of Facts, Ex. 12.) That appeal was decided unfavorably to plaintiff on October 1, 1993. (Stip.Stmnt. of Facts, Ex. 14.)

Comes now plaintiff seeking from this Court an award of the interest he claims was underpaid. While plaintiff originally asserted various interest underpayment claims before the retirement committee and sought interest rates higher than the plan rate of return for different relevant periods of underpayment, the gravamen of his complaint before this Court is as follows: that for the period of December 12 1991 (when the Committee conceded plaintiff's claim) to July 23, 1992, (when, upon completion of its re-calculations the Committee actually paid plaintiff his due) the Committee could not lawfully calculate his interest at the rate of return

---

1. It should be noted that no money was deducted from plaintiff's award for the plan's negative performance in 1992. Furthermore, plaintiff was credited with interest on the full amount of calculated underpayments as if none of the fore- mentioned overpayments to him (which were netted out when his underpayment calculation was made) had occurred. Finally, plaintiff was charged no interest on the earlier overpayments he received.

earned on plan assets (which as stated *infra* was—1.64%).[2] Plaintiff makes no objection to application of the rate of return formula as applied to the underpayments prior to the Committee's determination in his favor in December of 1991.

While plaintiff acknowledges that there is no plan provision directing or defining the payment of interest under his circumstances, he points to plan § 1.3.i which defines "credited interest" to be paid to members for withdrawn contributions. Plaintiff suggests that by analogy either that plan provision or N.Y.Civ.Prac.L. & R. § 5004 (McKinney's 1992), the New York statutory post-judgment interest rate,[3] or, 26 U.S.C. § 6621, the statutory interest rate applied to tax over and underpayments under Internal Revenue Code § 6621, should be used to calculate the interest applicable to his award during the period after the committee agreed to recalculate his benefit but before actual payment was received by plaintiff.

## II. DISCUSSION

Both party's have now moved for summary judgment.

### A. The Standard for Summary Judgment.

 Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Eastway Construction Corp. v. New York*, 762

F.2d 243, 249 (2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). It is with these considerations in mind that the court addresses defendant's motion for summary judgment. Here, by express stipulation there are no disputed issues of material fact so judgment as a matter of law may properly issue.

### B. The Relevant Law.

It cannot be disputed that since plaintiff herein seeks additional moneys from an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (1985 & 1994 Supp.) that it is only under ERISA's provisions that plaintiff may proceed. *See Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). As stated *supra* plaintiff's complaint comes to this Court upon removal. In all filings since removal, however, plaintiff has coyly avoided identifying that section of ERISA under which he pursues his claim. Since plaintiff seeks money damages and not equitable relief, it is clear that he may not proceed under ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3). *See Lee v. Burkhart*, 991 F.2d 1004 (2d Cir.1993). Likewise, since plaintiff seeks those damages on behalf of himself and not on behalf of a plan he cannot proceed under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). *See Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Finally, since plaintiff seeks no plan information neither ERISA §§ 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A) nor 502(a)(4), 29 U.S.C. § 1132(a)(4) are applicable. It follows then that plaintiff can obtain the relief he seeks, if at all, only under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

 It is undisputed that RPI's CRP makes no provision for the payment or calculation of interest on favorably decided claims for withheld benefits. It follows then, that the damages plaintiff seeks are extracontractual. *See Scott v. Central States Southeast and Southwest Areas Pension Plan*, 727

---

**2.** Plaintiff calculated the amount at issue at the time of filing as approximately $54.00.

**3.** Plaintiff offers not a shred of authority for his suggestion that this section should apply.

F.Supp. 1095, 1098 (E.D.Mich.1989). Furthermore, plaintiff herein seeks *only* an award of extracontractual interest: no questions of plan interpretation, benefits due or enforcement of rights under the plan's terms are presented. Defendant Retirement Committee therefore urges this Court to hold that extracontractual damages are not available under ERISA § 502(a). *Scott,* 727 F.Supp. at 1097–98; *cf. Russell,* 473 U.S. at 144, 105 S.Ct. at 3091 (no recovery of extracontractual damages flowing from breach of fiduciary duties under ERISA § 409.)

Plaintiff points out that *Russell* involved only a breach of fiduciary duty claim under ERISA § 502(a)(1) and that in *Burkhart,* 991 F.2d at 1004, the Second Circuit did not reach the issue of *Russell*'s applicability to causes of action under § 502(a)(1)(B) and (a)(3). *See Burkhart,* 991 F.2d at 1008. Plaintiff further urges that his claim is not extracontractual but rather requires enforcement of his rights under a plan term because the Retirement Committee expressly found that he was entitled to interest: by calculating that interest via the plan rate of return for the entire pre-repayment period (including the negative interest rate in the post-favorable decision but pre-actual payment period) the Committee violated the terms of its own decision and order.

This Court finds that it need not decide the extracontractual recovery question because it is clear that, *assuming arguendo* that plaintiff could proceed with his claim for extracontractual interest only under § 502(a)(1)(B), this Court would review the Retirement Committee's decision to calculate plaintiff's interest by applying the plan rate of return to the whole period the benefits were unpaid under the arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Jordan v. Retirement Committee of Rensselaer Polytechnic Institute,* No. 92–1648, slip op. at 10 (N.D.N.Y. May 1, 1994), *appeal docketed,* No. 94–7550, (2d Cir.1994) ("[RPI's CRP] unambiguously grants the Retirement Committee the highest degree of discretion both to determine eligibility for benefits and to construe the terms of the plan.") This Court further finds, after careful examination of the parties' submissions, the Committee's decision and plaintiff's objections thereto, that the Committee's interpretation and application of its decision to award plaintiff interest on his successful claim were both eminently reasonable.

As an initial matter, the CRP neither required nor prohibited the payment of interest. The Committee had no obligation to order interest payments to plaintiff and ERISA does not require such payments. Where the same body which undertook to award those payments, with neither guidance nor compulsion from the CRP, then selects a rational method by which those payments will be calculated, likewise with no guidance or compulsion by the CRP, it is difficult to conceive of how that decision could be held unreasonable under *any* standard of review. *cf. Scott,* 727 F.Supp. at 1098.

Furthermore, by choosing to apply the CRP's assets actual rate of return the Committee ensured that the CRP would neither profit by nor be penalized for its earlier miscalculation. It is in this context that the Court notes that, notwithstanding the tone of righteous indignation in plaintiff's correspondence with the Committee, there are no allegations of Committee bad faith regarding either the initial miscalculation or the delay between the decision favorable to plaintiff and his actual receipt of repayment. Defendant's miscalculation appears to be one of innocent prior plan misinterpretation, corrected by the Committee's self review after examining plaintiff's claim. There is likewise no indication that the period between notification to plaintiff that his view had prevailed and plaintiff's receipt of the underpayments was anything but an understandable and acceptable delay necessitated by administrative review and recalculation. Furthermore, under these innocent circumstances plaintiff proffers no rationale which would compel this Court to treat the pre and post-Committee decision periods of underpayment differently. The Committee's decision to neither penalize nor unjustly enrich RPI's CRP was, under these circumstances, entirely rational and reasonable. *See Short v. Central States,*

*Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 576 (8th Cir.1984).

Finally, although plaintiff would have this Court force a different rate of post-decision interest by "analogy," plaintiff ignores 28 U.S.C. § 1961, the statutory post-judgment interest rate applicable to district court judgments. Had plaintiff been forced to litigate his underlying claim and prevailed, prejudgment interest would have been awarded at the Court's discretion, exercised only "where such an award is 'fair, equitable, and necessary to compensate the wronged party fully.'" *Connecticut Gen. Life Ins. Co. v. Cole,* 821 F.Supp. 193, 202 (S.D.N.Y.1993) (citations omitted). Post-judgment however—the precise analogy to that which plaintiff herein seeks—any interest plaintiff received he would have received at the rate established by § 1961. *See Cefali v. Buffalo Brass Co.,* 748 F.Supp. 1011, 1026 (W.D.N.Y.1990) (applying § 1961 rate to pre and post-judgment award); *see also Freedman v. Wallace Steel, Inc. Profit Sharing Trust,* 1987 WL 6352, *3, 1987 U.S.Dist. LEXIS 926, *9 (N.D.N.Y. 1987) ("ERISA is a federal statute reflecting concerns of the federal government, and the interests of uniformity are best served by calculating interest in accordance with a single standard established by a federal statute.")

The defendant Committee has established that had interest been calculated over the entire miscalculation period under § 1961, *See Cefali,* 748 F.Supp. at 1026, plaintiff would actually have been entitled to *less* than he received by virtue of the Committee's decision to calculate via the CRP's assets' rate of return. (Dft.'s Memo. of Law Pt. III). Plaintiff neither disputes nor controverts defendant's § 1961 calculations, and responds only by offering the non-sequitur that "what the Committee might have done does not alter what it did in fact do." (Pltff.'s Reply Memo. of Law at 5). Presented with plaintiff's hair-splitting pre and post-decision dichotomy however, this Court finds that what it would have done, *at best,* would have resulted in an award of less interest than that granted to plaintiff by the defendant Committee. It follows then that this Court would not and will not today hold that the Committee's decision was unreasonable and therefore arbitrary and capricious. *See Firestone* 489 U.S. at 111, 109 S.Ct. at 954.

## III. CONCLUSION

Assuming *arguendo* that under ERISA plaintiff could prosecute a claim solely for interest against a retirement plan which makes no provision for interest awards, this Court finds that defendant Retirement Committee's decision to pay interest at its plan's investments' actual rate of return for the entire period that benefits were underpaid, both before and after its concession that recalculation was warranted, was rational and reasonable and neither arbitrary nor capricious. Therefore, plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**