Jonathan HAGUE, Plaintiff,

v.

**UNITED PAPERWORKERS INTERNATIONAL UNION, Hudson River Local No. 18 and Finch, Pruyn and Company, Inc., Defendants.**

No. 96–CV–463.

United States District Court,
N.D. New York.

Dec. 28, 1996.

Law Office of William E. Montgomery, III, William E. Montgomery, III, Glens Falls, NY, for Plaintiff.

Blitman & King L.L.P., Donald D. Oliver, Charles C. Spagnoli, Syracuse, NY, for Defendants United Paperworkers International Union and Hudson River Local No. 18.

Law Offices of Michael T. Wallender, Michael T. Wallender, Michael R. Monahan, Albany, NY, for Defendant Finch, Pruyn and Company, Inc.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff brought this hybrid Section 301/ duty of fair representation action pursuant to the Labor Management Relations Act, 29 U.S.C. § 185. The case arises out of plaintiff's dismissal by his employer in April of 1995. Defendants now move, pursuant to Fed.R.Civ.P. 56, for summary judgment dismissing the Complaint.

## I. BACKGROUND

### A. Facts: [1]

Defendant Finch, Pruyn and Company, Inc. (the "Company"), located in Glens Falls, New York, manufactures fine paper products. Plaintiff Jonathan Hague was first employed by the Company in June of 1974; he was later discharged in 1977. (Affidavit of Michael K. Strich ("Strich Aff."), ¶ 3). Plaintiff was thereafter re-hired on a temporary basis in November of 1981 and once again discharged in January of 1982. (*Id.*). In March of 1982, plaintiff was re-hired on a temporary basis and became a full-time employee one month later. (*Id.*). Plaintiff remained employed with the Company, principally as a laborer in the Buildings and Grounds Department, until his discharge on April 17, 1995. (*Id.*).

Defendants United Paperworkers International Union ("UPIU") and Hudson River Local No. 18 ("Local 18") (collectively, the "unions") are labor organizations engaged in representing employees of the Company. (UPIU 7.1(f) Statement, ¶¶ 2–3). From approximately 1980 through April of 1995, plaintiff was a member in good standing of both Local 18 and the UPIU. (*Id.* ¶ 5).

From the period June 16, 1991 to June 15, 1996, the Company, UPIU and Local 18 were parties to a collective bargaining agreement ("CBA") which governed the terms and conditions of employment of members of the bargaining unit represented by the UPIU and Local 18. (*Id.* ¶ 6; *see* Compl., Ex. A). Articles 9 and 10 of the CBA establish procedures for processing and adjusting grievances. (Compl., Ex. A). Specifically, the CBA provides a four-step procedure for the processing of grievances. (*Id.*).

Defendants allege (and plaintiff does not dispute) that on December 30, 1992, plaintiff was accused of insubordination and use of profane language in a disrespectful manner toward Company supervisors. (UPIU Rule 7.1(f) Statement, ¶ 8; Affidavit of Steven Scarselletta ("Scarselletta Aff."), ¶ 3). Thereafter, on January 6, 1993, plaintiff, Company Personnel Director Michael Strich ("Strich"), and Local 18 President Steven G. Scarselletta ("Scarselletta"), signed a "Memorandum of Agreement" ("Last Chance Agreement," or "LCA"), which stated, in pertinent part, that

> the Employee and the Union agrees [sic] that any further occurrences of this nature will result in disciplinary action up to and including discharge. This action will be at the Company's discretion and the Employee and Union waive any and all claims that should arise as a result of the Company's action.

(Compl., Ex. D). In addition, the LCA contained the understanding that plaintiff would be suspended through January 12, 1993. (*Id.*).

On April 4, 1995, plaintiff was again accused (wrongly, he contends) of insubordination.[2] (Pl.Aff.; ¶ 3; Affidavit of Dale Grinnell

---

1. In determining which facts are or are not in dispute in this action, the Court emphatically is not aided by plaintiff's Rule 7.1(f) statement, styled a "statement of material facts." Local Rule 7.1(f) requires that

 > [t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts *as to which it is contended that there exists a genuine issue*, with specific citations to the record where the factual issues arise. All material facts set forth in the statement served by the moving party *shall be deemed admitted unless controverted by the statement served by the opposing party.*

 Rule 7.1(f), Local Rules of the Northern District of New York. Plaintiff's statement, rather than asserting disputed factual issues, merely consists of a summary of plaintiff's allegations, along with a number of facts as to which there is surely

no dispute (e.g., that plaintiff is a resident of Queensbury, New York).

 Since plaintiff does not specifically controvert many of the assertions in defendants' Rule 7.1(f) statements, those assertions are deemed admitted. *See* Local Rule 7.1(f), *supra.* Thus, much of this case's factual background is drawn from defendants' statements. The Court is nonetheless mindful, however, of its obligation to resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *See infra,* section II(A)(1).

2. The parties have different versions of the events of April 4, 1996. According to the Complaint, plaintiff was injured while working as a safety director on the day in question. (Compl. ¶ 15). Thereafter, a Company nurse recommended that plaintiff receive stitches for the injury, which plaintiff declined, apparently believing that a bandage would suffice. (*Id.*). He was then in-

("Grinnell Aff."), ¶ 3). Plaintiff was suspended from his employment the same day. (Pl. Aff., ¶ 3). On April 17, 1995, plaintiff was informed that he was discharged due to his alleged violation of the LCA. (*See* Compl., ¶ 17; Compl., Ex. B; Pl.Aff. ¶ 3).

Plaintiff contends that following his suspension on April 4, 1995, both the UPIU and Local 18 failed to object, file a written grievance, or request a third step hearing[3] as required by the CBA. (Pl.Aff., ¶ 4). According to plaintiff, it was not until May 4, 1995, that he was successful in convincing Local 18 to file a grievance on his behalf. Plaintiff alleges that despite the eventual filing of the grievance, he was nonetheless never afforded a third step hearing. (Pl.Aff., ¶ 6).

Defendants' version of these events is different. They allege that Local 18 performed an investigation at plaintiff's request, although they do not specify the date on which the investigation began. (*See* Grinnell Aff., ¶ 4). Furthermore, defendants contend that a third step meeting was in fact held on May 8, 1996, attended by plaintiff, Grinnell, Plant Manager Raymond Barrows ("Barrows"), Assistant Superintendent James Summers ("Summers"), Christopher Carota, Superintendent Tim Carota and Strich. (Strich Aff. ¶ 12; Grinnell Aff. ¶ 7). Defendants allege that at the conclusion of this meeting, it was the Company's position that plaintiff's actions on April 4, 1995, violated the LCA and were cause for his discharge. (*Id.*). Plaintiff contends that these assertions are untrue; however, he does not seem to deny that this meeting in fact occurred, since he later asserts that "[i]t is undisputed that the "Step 3" hearing to which Mr. Strich and Mr. Grinnell refer occurred well over a month after the date on which I was suspended ..." (Pl.Aff., ¶ 6). Thus, plaintiff seems only to take issue with defendants' characterization of the meeting as a third step hearing.

The Company submitted its written answer to plaintiff's grievance on May 10, 1995. (Strich Aff. ¶ 13 and Ex. F; Grinnell Aff., ¶ 8; Pl.Aff., ¶ 8). Following receipt of the answer, the Executive Board of Local 18 voted to submit plaintiff's grievance for arbitration.[4] (Grinnell Aff., ¶ 9). In June of 1995, Local 18 retained Attorney Bruce C. Bramley for the arbitration. (Grinnell Aff., ¶ 9; Pl.Aff., ¶ 8).

Plaintiff alleges that during the course of the preparation for the arbitration, several

---

structed by the nurse to fill out an accident report. (*Id.*).

Plaintiff then alleges that he reported to the office of Company foreman Christopher Carota ("Carota"), who advised plaintiff that they were out of accident reports. (*Id.* ¶ 16). A conversation ensued, after which plaintiff left the office visibly upset. (Compl., ¶ 16). Plaintiff alleges in his Memorandum of Law that there existed a certain animosity between he and Carota, the result of a longstanding family feud. (*See* Pl. Mem. in Opp. at 1–2).

Defendants rely for their version of these events on an internal memorandum prepared by Carota. (See Affidavit of Michael K. Strich ("Strich Aff."), ¶ 8 and Ex. C). According to Carota, plaintiff was agitated as soon as he came into the office. (Strich Aff., Ex. C). Carota further contends that he was primarily concerned with calming plaintiff down, as he "has a tendency to fly off the handle." (*Id.*). After asking plaintiff to calm down, Carota alleges plaintiff responded "I don't have time for this shit," and began to walk out of the office, slamming his fist into a file cabinet on the way out. (*Id.*). At that point, Carota alleges that he yelled at plaintiff to come back, but he didn't. (*Id.*).

3. As part of the grievance procedures of article 9 of the CBA, if no satisfactory settlement can be reached between the Shop Steward, the aggrieved employee, and the department foreman (step one), and if, after reducing the grievance to writing, the Shop Steward, Local Union President and Company Personnel Director cannot settle the dispute (step two), the aggrieved employee is entitled to a third step hearing. (*See* Compl., Ex. A, Article 9). The third step hearing requires that

> the grievance will be discussed by a representative of the International Union, who, with the aggrieved, the Shop Steward and the Local Union President will meet with the Plant Manager, or Plant Manager's designee and the Personnel Director. All third step grievances will be answered within one (1) week. Times for third step grievances will be mutually agreed upon between the Company representatives and the union representatives.

(Compl., Ex. A, Article 9). If the grievance involves a suspension or discharge, however, the third step hearing must be held within 48 hours. (*Id.*).

4. Plaintiff alleges that this vote was the result of his "persistent efforts and garnering of support of many members of defendant Local 18 ..." (Pl.Aff., ¶ 8).

union officials, including Grinnell, indicated to him that the LCA was either invalid, or that they were unaware of its existence, and that "it was agreed by everyone that it would be imperative to challenge the validity of said [LCA] at the time of the arbitration hearing." (Pl.Aff., ¶ 10). Plaintiff further alleges that during his one and only meeting with Bramley, he was assured that the validity of the LCA would be challenged, as would the violation of defendants' rights by the Company, UPIU and Local 18, and the Company's version of the events of April 4, 1995. (Pl.Aff., ¶ 11). He was also allegedly assured by Bramley that all the necessary witnesses would be called and necessary documents subpoenaed. (*Id.* ¶ 12). Plaintiff contends that none of the witnesses were interviewed, nor were the documents subpoenaed. (*Id.* ¶ 12).

The arbitration hearing was held August 25, 1995, before Arbitrator Sumner Shapiro ("Shapiro"). During that hearing, Bramley did not in fact challenge the validity of the LCA, and none of the union officials who expressed doubts as to its validity to plaintiff were called as witnesses. (Pl.Aff., ¶ 13). Nor was the alleged violation of plaintiff's rights under article 9 the CBA challenged, as plaintiff alleges he was promised. (Pl.Aff. ¶ 14).

Defendants allege that the decision not to challenge the validity of the LCA during the hearing was a tactical determination. (Grinnell Aff., ¶ 12). Bramley himself asserts that it was his opinion that doing so would not be helpful, and that plaintiff agreed to this decision, both at the August 15 meeting, and in a telephone conversation between Bramley and plaintiff on August 18. (Bramley Aff., ¶¶ 6, 10). Bramley suggested that such an argument would be better made in a post-hearing brief to the arbitrator. (*Id.*). Such a brief was in fact submitted. (*Id.* ¶ 12 and Ex. A). Bramley also denies that he ever promised plaintiff that he would subpoena documents for the purpose of challenging the LCA. (*Id.* ¶ 9).

The arbitration hearing was held on August 25, 1995. The substance of that proceeding is documented in the Opinion and Award of Arbitrator Sumner Shapiro, dated September 15, 1995, attached to plaintiff's affidavit as Exhibit 4. Shapiro found, in sum, that (1) the LCA was valid; (2) the LCA did not foreclose plaintiff from invoking the arbitration process; (3) the Company did not violate the CBA when it discharged plaintiff pursuant to the LCA. (See Pl.Aff., Ex. 4). Local 18 did not seek to vacate the award, contending that Bramley concluded that there were no grounds to do so. (Grinnell Aff., ¶ 16).

Sometime after the arbitrator's decision was rendered, plaintiff contacted Bramley. Plaintiff asked Bramley whether the decision could be appealed; according to plaintiff, Bramley responded that an appeal based upon the validity of the LCA or the alleged violation of plaintiff's rights under the CBA would require him to take a position adverse to that of his client, Local 18. (Pl.Aff., ¶ 27). Bramley contends that he simply told plaintiff an appeal would be up to his client, Local 18. (Bramley Aff., ¶ 15). Bramley additionally alleges that plaintiff inquired about suing Local 18, and hiring Bramley, both of which Bramley declined, as Local 18 was his client. (Bramley Aff., ¶¶ 14–15).

**B. Procedural History:**

Plaintiff filed this lawsuit on March 18, 1996. The Complaint contains three causes of action, based upon: (1) plaintiff's wrongful termination by the Company, in violation of the CBA; (2) breach of the duty of fair representation against UPIU and Local 18; and (3) a claim that the arbitrator's Opinion and Award is void. Plaintiff seeks $1.5 million in compensatory and $1.5 million in punitive damages, a determination that the Opinion and Award is void and unenforceable, costs and disbursements.

UPIU, Local 18, and the Company filed answers on May 22, May 30 and June 3, 1996, respectively. UPIU and Local 18 moved for summary judgment on October 17, 1996, and the Company's motion followed on October 22. Defendants argue that: (1) plaintiffs conclusory allegations are insufficient to demonstrate any breach of the duty of fair representation; (2) plaintiff has shown no prejudice as a result of UPIU and Local 18's alleged actions; (3) the Company's dis-

charge of plaintiff did not violate the CBA; and (4) plaintiff's claim that the Opinion and Award is void is untimely.

## II. DISCUSSION

### A. Defendant's Motion for Summary Judgment.

The Court now turns to defendants' motions for summary judgment.

### (1) The Standard for Summary Judgment

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electrical Industrial Co*, 475 U.S. at 585–86, 106 S.Ct. at 1355–56. A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *See id.* at 250–51, 106 S.Ct. at 2511–12. Once the movant has established the absence of a genuine issue of material fact, the non-moving party must come forward with enough evidence to allow a rational trier of fact to find for the non-moving party. *Matsushita Electric Industrial Co.*, 475 U.S. at 586, 106 S.Ct. at 1355–56. The motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Id.*

It is with these considerations in mind that the Court addresses defendants' motions for summary judgment.

### (2) Hybrid Section 301/Duty of Fair Representation Claim

Section 301 of the Labor Management Relations Act provides, in pertinent part:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1978). It is well-settled that under this section, an individual employee may sue his employer for breach of a collective bargaining agreement. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 2289–90, 76 L.Ed.2d 476 (1983); *Smith v. Evening News Assn.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Since, however, employees are generally required to invoke an arbitration mechanism in any such agreement, courts have implied a cause of action against the union representing the bargaining unit to ensure that the employees interests are fairly represented. *See DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290–91; *see also Vaca v. Sipes*, 386 U.S. 171, 193, 87 S.Ct. 903, 918, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976). Such protection is necessary since "the collective bargaining system as encouraged by Congress and administered by the NLRB ... subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit." *Vaca*, 386 U.S. at 182, 87 S.Ct. at 912.

Thus, where the employee in fact invokes the necessary grievance procedures, and, regardless of their outcome, shows that the union acted in an arbitrary, discriminatory, or perfunctory fashion in its representation, the employee may bring suit against both the union and the employer. *DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290–91; *Vaca*, 386 U.S. 171, 87 S.Ct. 903; *Hines*, 424 U.S. 554, 96 S.Ct. 1048; *see also United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). Such a lawsuit, known as a "hybrid § 301/fair representation claim," *DelCostello*, 462 at 165, 103 S.Ct. at 2291, encompasses two causes of action.

> The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.

*DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290; *see also United Steelworkers of America, AFL–CIO–CLC v. Rawson*, 495 U.S. 362, 372, 110 S.Ct. 1904, 1911, 109 L.Ed.2d 362 (1990); *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 563, 110 S.Ct. 1339, 1343–44, 108 L.Ed.2d 519 (1990); *McKee v. Transco Products, Inc.*, 874 F.2d 83 (2d Cir.1989).

The two claims, however, are " 'inextricably interdependent.' " *DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2291 (quoting *Mitchell*, 451 U.S. at 66–67, 101 S.Ct. at 1566 (Stewart, J., concurring in judgment)). "To prevail against either the company or the Union . . . [the employee] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." *Hines*, 424 U.S. at 570–71, 96 S.Ct. at 1059. Thus, the claims essentially stand or fall together. *See Abrams v. Carrier Corp.*, 434 F.2d 1234, 1252 (2d Cir.1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); *Wallace v. AT & T*, 460 F.Supp. 755, 759 (S.D.N.Y.1978).

Defendants argue that plaintiff in the present action can show neither a breach of the collective bargaining agreement by the Company, nor a breach of the duty of fair representation by the unions.

### a) Duty of Fair Representation

Plaintiff must prove two elements on his duty of fair representation claim: (1) that the union's conduct in representing him was arbitrary, discriminatory, or in bad faith; and (2) that such conduct " 'seriously undermined the arbitral process.' " *Barr v. United Parcel Service, Inc.*, 868 F.2d 36, 43 (2d Cir.), *cert. denied*, 493 U.S. 975, 110 S.Ct. 499, 107 L.Ed.2d 502 (1989).

As to the first of these elements, since a "wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents," *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), the union's conduct in representing plaintiff must be "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *N.L.R.B. v. Local 282, International Brotherhood of Teamsters*, 740 F.2d 141, 147 (2d Cir.1984) (quoting *Robesky v. Qantas Empire Airways, Ltd.*, 573 F.2d 1082, 1089–90 (9th Cir.1978)). Defendants argue that plaintiff's proof falls far short of this standard.

Plaintiff takes issue with the following actions of UPIU and Local 18 in his Complaint: (1) that they failed to use good faith efforts to investigate, obtain and present witnesses and documentary evidence favorable to plaintiff at the grievance hearings and arbitration hearings; (2) that they deliberately failed to produce such evidence; (3) that they failed to object to prejudicial evidence presented to the arbitrator by the Company; (4) that they failed to disclose the conflict in the Union representing plaintiff's position, and that they should have provided independent counsel for plaintiff; (5) that Bramley's representation of plaintiff was generally inadequate; (6) that UPIU and Local 18 failed to adequately challenge the LCA at the arbitration hearing; (7) that they failed to take action to vacate the Opinion and Award; and (8) that

UPIU, Local 18 and the Company conspired to permit plaintiff's discharge without just cause. (Pl.Compl., ¶¶ 30–33).

It is clear from the facts outlined *supra* that defendants have met their burden of showing the absence of a material fact issue. *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975). Defendants submissions demonstrate that UPIU and Local 18 at all times acted in good faith in their representation of plaintiff. Plaintiff, however, advances three arguments in favor of a finding of breach by the defendant unions. The Court now addresses these arguments *seriatim.*

**(i) Hostile Conduct**

█ Plaintiff argues that his Complaint and affidavit demonstrate an antagonistic relationship that existed between he and the defendants. Plaintiff further argues that "hostile conduct by defendant Unions toward plaintiff constitutes breach of duty of fair representation." (Pl.Mem. in Opp. at 4). To defeat defendants' motion, however, plaintiff must "set forth concrete specific facts from which one can infer [the] union's hostility, discrimination, bad faith, dishonesty, or arbitrary exercise of discretion." *Lapir v. Maimonides Medical Ctr.*, 750 F.Supp. 1171, 1177 (E.D.N.Y.1990) (citation and internal quotation marks omitted); *see Spielmann v. Anchor Motor Freight, Inc.*, 551 F.Supp. 817, 822 (S.D.N.Y.1982). This plaintiff has not done.

Plaintiff asserts in his affidavit that former Local 18 President Steven Scarselletta was hostile to him because plaintiff worked against Scarselletta in his bid for re-election. (Pl.Aff., ¶¶ 28–29). Plaintiff additionally contends that during the incidents surrounding the signing of the LCA, Scarselletta spoke of plaintiff in derogatory and hostile terms to Company employees. It is plainly apparent that from these bare assertions, no inference of UPIU or Local 18's hostility toward plaintiff in their representation of him can be drawn.[5] Even assuming that Scarselletta was hostile to plaintiff, plaintiff offers no evidence that this hostility played any part in the unions' representation of him with regard to his grievance; plaintiff's assertions that unfair representation may be inferred from such hostility amount to little more than speculation.

**(ii) Arbitrary and Bad Faith Conduct**

Plaintiff next argues that the unions' and Bramley's representation of him prior to and during the arbitration hearing were performed in an arbitrary and perfunctory manner. To support this argument, plaintiff asserts that despite affirmative representations by Bramley to the contrary, no documents were subpoenaed or witnesses called with respect to challenging the validity of the LCA or the processing of plaintiff's grievance.

█ "The grievance process cannot be expected to be error free." *Hines*, 424 U.S. at 572, 96 S.Ct. at 1060. "Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Barr v. United Parcel Service, Inc.*, 868 F.2d 36, 43 (2d Cir.1989); *see Cook v. Pan American World Airways, Inc.*, 771 F.2d 635, 645 (2d Cir.1985), *cert. denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986). For example, the failure to call witnesses at grievance hearings and failure to prepare adequately for arbitration do not rise to the level of arbitrariness or bad faith. *See Barr*, 868 F.2d at 43. Here too, it cannot be said that Bramley's failure to challenge the validity of the LCA at the arbitration amounted to arbitrary or bad faith conduct. In his affidavit, Bramley states that "it was my opinion that it would not be helpful, and indeed likely would be counterproductive" to do so. (Bramley Aff., ¶ 6). Indeed, Bramely's assertion is supported by the fact that he *did* challenge the validity of the LCA in the post-

---

5. Moreover, insofar as plaintiff's assertions can be read to allege unfair representation regarding the execution of the LCA, such allegations clearly are time-barred. The LCA was executed over three years prior to the filing of plaintiff's complaint. The statute of limitations for duty of fair representation claims is six-months. *See DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Ghartey v. St. John's Queens Hospital*, 869 F.2d 160, 162 (2d Cir.1989); *King v. New York Telephone Co.*, 785 F.2d 31, 33 (2d Cir.1986).

hearing brief. (See Bramley Aff., Ex. A). The arguments asserted by Bramley in the post-hearing brief were specifically addressed and rejected by Shapiro in his Opinion and Award. (*See* Compl., Ex. 4).

■■■ Drawing all inferences in plaintiff's favor, the union's conduct was negligent at worst. Plaintiff offers nothing more than conclusory allegations of arbitrariness and bad faith in his affidavit. Such allegations, "without specifying supporting facts to show a union's lack of good faith, fail to state a valid claim." *Yakowec v. Niagara Mohawk Power Corp.*, No. 92–CV–1130, 1993 WL 226435 at *12 (N.D.N.Y. June 24, 1993) (McCurn, J.) (quoting *Lapir v. Maimonides Medical Center*, 750 F.Supp. 1171, 1177 (E.D.N.Y.1990)); *see also Rigby v. Coughlin*, 730 F.Supp. 1196, 1198 (N.D.N.Y.1990).

The same can be said of plaintiff's allegations that he was not afforded a step one or two hearing. The Company's position throughout the grievance process was that plaintiff had waived any rights to such hearings by signing the LCA. (Strich Aff., ¶ 19). It takes two to tango, particularly in the context of a labor dispute; thus, the unions can hardly be faulted for the Company's refusal, until the May 8 meeting, to engage in the grievance process as required by article 9 of the CBA. Furthermore, plaintiff has submitted no evidence whatsoever that any bad faith or dilatory conduct on the unions' part contributed to the delay in the processing of plaintiffs' grievance.

### (iii) Conflict of Interest

■■■ Plaintiff next asserts that because he was not told that Local 18, rather than he, was Bramley's client, a conflict of interest was present to which plaintiff did not consent. Plaintiff further argues that this conflict violated the unions' duty of fair representation.

It is unquestionable that the unions had a duty to represent plaintiff at the arbitration. That they chose to do so through counsel, rather than a union representative, does not automatically give rise to a conflict of interest. It is not uncommon for unions to hire outside counsel to represent them in grievances on employees' behalf. Moreover, "whether it be house counsel or outside union counsel, where the union is providing the services, the attorney is hired and paid by the union to act for it," even where "the underlying grievance belongs to a particular union member who has a very real interest in the manner in which the grievance is processed." *Peterson v. Kennedy*, 771 F.2d 1244, 1258 (9th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). The conflict that plaintiff asserts is present in *any* situation in which a union provides legal representation for one of its members. "In a labor dispute with an employer it is the union which carries on the dispute. The member's rights must be exercised through the union and it is the union which is the client of the law firm." *Adamo v. Hotel, Motel, Bartenders, Cooks and Restaurant Workers' Union*, 655 F.Supp. 1129 (E.D.Mich.1987).

It is clear that Local 18 was Bramley's client at the arbitration hearing, as evidenced by the caption on the Opinion and Award. (*See* Pl.Aff., Ex. 4). That relationship did not give rise to a conflict of interest with respect to plaintiff. This conclusion is apparent by analogy to cases holding that no conflict is present when union counsel who represented the union in handling an employee's grievance may subsequently represent the union when the dissatisfied employee brings a § 301 claim. *See Tisby v. Buffalo General Hosp.*, 157 F.R.D. 157, 167 (W.D.N.Y.1994); *Adamo*, 655 F.Supp. at 1129; *Griesemer v. Retail Store Employees Union Local # 1393*, 482 F.Supp. 312, 315 (E.D.Pa.1980).

In summary, the Court finds that plaintiff has failed to set forth sufficient evidence showing a genuine issue of material fact as to the any arbitrary, discriminatory, or bad faith conduct on the part of the unions. Thus, plaintiffs claim premised upon the unions' breach of the duty of fair representation must be dismissed. Because the fair representation claim has been dismissed, plaintiff's claim against the Company for breach of the CBA must be dismissed as well. *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1252 (2d Cir. 1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct.

1253, 28 L.Ed.2d 545 (1971); *Wallace v. AT & T,* 460 F.Supp. 755, 759 (S.D.N.Y.1978).

#### (3) Vacation of Opinion and Award

In his third cause of action, plaintiff seeks a declaration that the Opinion and Award issued September 18, 1995, is void. The Company argues that this claim is untimely.

 The sole source of subject matter jurisdiction of plaintiff's claims is section 301 of the LMRA. (Compl., ¶ 5). "The timeliness of a [section] 301 suit ... is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966); *see Reed v. United Transportation Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). New York's 90–day statute of limitations for an action to vacate an arbitration award is analogous in the present situation, and thus plaintiff's cause of action is untimely. *See Harry Hoffman Printing v. Graphic Com., Local 261,* 912 F.2d 608, 612 (2d Cir.1990); N.Y.Civ.Prac. Law & Rules § 7511(a) (McKinney 1980). Therefore, plaintiff's third cause of action must be dismissed.

### III. CONCLUSION

For all of the foregoing reasons, it is hereby

ORDERED, that defendants' motions for summary judgment are GRANTED, and the Complaint in its entirety is DISMISSED.

IT IS SO ORDERED.