**Accursio DEVITO, as Administrator of the Estate of Jennie DeVito, Plaintiff,**

v.

**PENSION PLAN OF LOCAL 819 I.B.T. PENSION FUND and Board of Trustees of the Pension Plan of Local 819 I.B.T. Pension Fund, Defendants/Third Party Plaintiffs,**

**Connecticut General Corporation, Third Party Defendant.**

No. 90 Civ. 5299(MJL).

United States District Court, S.D. New York.

Jan. 7, 1997.

Edgar Pauk, Legal Services for the Elderly, New York City, for Plaintiff.

Davis & Gilbert by Andrew E. Graw, New York City, for Defendants/Third Party Plaintiffs.

Putney, Twombly, Hall & Hirson by Thomas A. Martin, New York City, for Third–Party Defendant Connecticut General Corp.

## OPINION AND ORDER

LOWE, District Judge.

Before the Court are the cross-motions for summary judgment of Plaintiff Accursio De-Vito and Defendants Pension Plan of Local 819 I.B.T. Pension Fund (the "Plan") and Board of Trustees of the Pension Plan of Local 819 I.B.T. Pension Fund ("Board of Trustees"). For the reasons stated below, the Court grants Plaintiff's motion in part and denies Plaintiff's motion in part, and grants Defendants' motion in part and denies Defendants' motion in part.

## BACKGROUND

Plaintiff brings this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, ("ERISA") and the Labor–Management Relations Act, 29 U.S.C. § 141 *et seq.* ("Taft–Hartley Act"). Plaintiff seeks declaratory and injunctive relief for Defendants' alleged violations of ERISA and the Taft–Hartley Act (*e.g.*, implementation of a "non-ratable" social security benefit offset formula under the Plan). Plaintiff alleges: (1) Defendants' amendment of the Plan violated ERISA § 204(b)(1)(c), 29 U.S.C. § 1054(b)(1)(c), and 26 C.F.R. 1.411(b)–1(b)(3), by including a "non-ratable" social security offset; (2) Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104, by including the offset provision in the Plan amendment; (3) Defendants violated Section 302(c)(5) of the Taft–Hartley Act, 29 U.S.C. § 186(c)(5), by including a provision in the Plan not for the exclusive benefit of plan participants and beneficiaries; and (4) Defendants violated ERISA § 203(a), 29 U.S.C. § 1053(a), by paying Plaintiff an insufficient rate of interest on retroactive pension payments.

## I. *Facts*

### A. *Plaintiff's Employment and Pension Benefits*

Former Plaintiff Jennie DeVito ("Ms.De-Vito")[1] was born on July 30, 1916. Complaint ¶ 9; Amended Answer ¶ 2. From October 7, 1968 to November 6, 1981, over thirteen years, Ms. DeVito worked, without interruption, at Karpel Curtain Corp. in New York City. Complaint ¶ 9; Amended Answer ¶ 2. Throughout Plaintiff's employment at Karpel Curtain Corp., her employer made pension contributions to the Plan on her behalf. Complaint ¶ 9; Amended Answer ¶ 2.

The Board of Trustees is responsible for funding, administering and creating the provisions of the Plan. Complaint ¶ 8; Amended Answer ¶ 2. Although the Board of Trustees administers the Plan, Third–Party Defendant Connecticut General Life Insurance Company ("CIGNA") performs the actual calculation of the pension benefits payable to retirees, including Plaintiff. Complaint ¶ 18; Amended Answer ¶ 8.

On November 13, 1981, Plaintiff applied to receive a pension from the Plan. Complaint ¶ 10; Amended Answer ¶ 2. In late February 1982, Plaintiff received a pension check from the Plan in the amount of $90.66. Complaint ¶ 11; Amended Answer ¶ 2. This check covered the months of December 1981 through February 1982, representing a monthly amount of $30.22. Complaint ¶ 11; Amended Answer ¶ 2. Plaintiff continued to receive monthly pension checks from the Plan in the amount of $30.22 until December 1987. Complaint ¶ 11; Amended Answer ¶ 2.

By letter dated January 5, 1988, Plaintiff's counsel, Edgar Pauk ("Pauk"), requested that the "Plan Administrator" verify the amount of Plaintiff's pension. Complaint ¶ 19; Amended Answer ¶ 8. The Plan Administrator referred Plaintiff's request to CIGNA. Complaint ¶ 19; Amended Answer ¶ 8. Pauk and CIGNA subsequently engaged in a series of correspondence concerning Plaintiff's pension. Complaint ¶ 19; Amended

Answer ¶ 8. In a letter dated March 9, 1989, Pauk expressed to CIGNA his belief that the Plan's "social security offset" violated ERISA. Complaint ¶ 19; Amended Answer ¶ 8. By letter dated April 6, 1989, CIGNA, on Defendant's behalf, confirmed its calculation of Plaintiff's pension. Complaint ¶ 21; Amended Answer ¶ 10. By letter dated May 9, 1989, Pauk appealed CIGNA's calculation of Plaintiff's pension to the Board of Trustees. Complaint ¶ 21; Amended Answer ¶ 10. By letter dated May 9, 1989, Perry Scalza ("Scalza"), a Plan Administrator, returned Plaintiff's appeal letter to Pauk without explanation. Complaint ¶ 21; Amended Answer ¶ 10. Scalza also enclosed copies of Plaintiff's pension application and the worksheets CIGNA used to calculate Plaintiff's pension. Complaint ¶ 21; Amended Answer ¶ 10. Pauk reviewed CIGNA's calculation of Plaintiff's pension and, using CIGNA's formula, calculated her pension at $41.30 rather than $30.22 and notified CIGNA of the recalculation. Complaint ¶ 22; Amended Answer ¶ 10.

By letter dated June 20, 1989, Pauk requested that Scalza inform him of the status of Plaintiff's appeal and explain why her appeal letter was returned. Complaint ¶ 23; Amended Answer ¶ 10. By letter dated June 21, 1989, Scalza informed Pauk that Plaintiff's appeal was being reviewed by CIGNA. Complaint ¶ 23; Amended Answer ¶ 10. In July 1989, CIGNA sent Plaintiff an "adjustment check" in the amount of $1,019.36, which represented the amount of purported "underpayment" of her pension since 1981 as per Pauk's recalculation. Complaint ¶ 24; Amended Answer ¶ 10. This amount did not include interest. Complaint ¶ 24; Amended Answer ¶ 10.

By letter dated July 26, 1989, Pauk requested that the Plan pay interest on the higher of the "legal rate" or the "rate earned by the Plan" to Plaintiff. Complaint ¶ 25; Amended Answer ¶ 10. In September 1989, Plaintiff received a check for $462.79 from CIGNA which represented five percent interest on the amount of underpayment. Com-

---

1. Ms. DeVito died on September 24, 1991. Pauk Aff. ¶ 5. Ms. DeVito's son, Accursio DeVito, was named the administrator of her estate on May 30, 1992, *id.*, and was substituted as Plaintiff in this action by an order of this Court dated March 30, 1993.

plaint ¶ 26; Amended Answer ¶ 10. Pauk subsequently complained to the Board of Trustees that the interest rate applied to the underpayment was insufficient. Complaint ¶ 27; Amended Answer ¶ 10. Pauk also requested that the Board of Trustees decide Plaintiff's pending appeal regarding the social security benefit offset. Complaint 1 27; Amended Answer ¶ 10. By letter dated September 28, 1989, Scalza responded that Plaintiff's claims were being decided by CIGNA. Complaint ¶ 28; Amended Answer ¶ 10. Plaintiff contends, and Defendants fail to dispute, that the Board of Trustees has not decided Plaintiff's appeal. Complaint ¶ 29.[2]

### B. *The Plan*

The Board of Trustees established the Plan on January 14, 1966. Complaint ¶ 7; Amended Answer ¶ 2. ERISA first applied to the Plan on October 1, 1976, when the Plan was amended in an effort to bring it into compliance with the statute. Complaint ¶ 7; Pl.'s 3(g) Statement ¶ 15; Defs.' 3(g) Statement, Part II ¶ 1. The Plan is funded with contributions from employers who have collective bargaining agreements with Local 819 of the International Brotherhood of Teamsters. Complaint ¶ 7; Amended Answer ¶ 2. Section 4.2 of the Plan provides a "Basic Formula" for calculating the monthly amount of an employee's pension. Complaint ¶ 13; Amended Answer ¶ 4. Under the Basic Formula, a pensioner's monthly pension equals the greater of: (1) [ (1/12) × (.45 × (Final Earnings)) × (years of participation / 20) ]- [Pensioner's Social Security Benefit]; or (2) $2.00 × (the Participant's full years of Credited Service up to a maximum of 20 years). Complaint ¶ 13; Seide Aff. Ex. F at 21–22 (copy of the Plan). The Plan defines "Final Earnings" as "the average of the Participant's annual earnings received from his Employer during the latest five year period immediately preceding the Participant's Retirement Date or date of Termination of Employment, whichever first occurs." Com-

plaint ¶ 14; Seide Aff. Ex. F at 5–6. The Plan defines "social Security Benefit" as "the monthly Primary Insurance Amount which a Participant is eligible to receive under the provisions of the federal Social Security Act ..." *Id.* at 6–7. The Plan defines "Credited Service" as the "period of employment used in calculating the Participant's pension ..." *Id.* at 8. Plaintiff's Final Earnings are $8,574.50, Pl.'s Rule 3(g) Statement ¶ 5, and her Social Security Benefit is $135.68, *id.* ¶ 8.[3]

## DISCUSSION

### I. *Summary Judgment*

#### A. *Standards*

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Furthermore, the Federal Rules of Civil Procedure "mandat[e] the entry of summary judgment, after adequate discovery and upon motion, against' a party who fails to make a showing sufficient to establish the existence of an. element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted). Rather, the opposing party must produce "concrete evidence from which a reasonable juror could return a verdict in [its] favor...." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d

---

2. Defendants simply "deny knowledge" of this allegation. Amended Answer ¶ 11. This allegation does not appear in the parties' 3(g) Statements and is not material to the resolution of the parties' motions.

3. Defendants originally denied Plaintiff's calculation of her Final Earnings, but failed to provide the Court with evidence demonstrating the actual figures. *See* Defs.' Rule 3(g) Statement ¶ 5. However, Defendants have since conceded that Plaintiff's calculations of Final Earnings are accurate. *See* Defs.' Supp. Mem. at 2.

Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)).

" 'When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other.' " *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting *Schwabenbauer v. Board of Educ. of Olean*, 667 F.2d 305, 313 (2d Cir. 1981)). " 'Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.' " *Id.* (quoting *Schwabenbauer*, 667 F.2d at 314).

### B. *The Parties' Motions*

Plaintiff argues that the Plan's Basic Formula violates ERISA because it "backloads" a participant's pension benefits, *i.e.*, under the Basic Formula, participants do not accrue substantial pension benefits until the latter years of their participation in the Plan. Plaintiff thus seeks that the Court reform the Basic Formula to bring it into compliance with ERISA.

In their cross-motion for summary judgment, Defendants raise two affirmative defenses. First, Defendants argue that the Court must dismiss this action as untimely because (1) New York's six-year statute of limitations under either CPLR § 213(1) or § 213(2) applies to this ERISA action, and (2) the statute of limitations began to accrue once the Plan was amended in 1976 and, therefore, Plaintiff's ability to sue expired in 1982, well before she commenced this action in 1990. Second, Defendants argue that the Court lacks jurisdiction to "reform" the Plan under either ERISA or the Taft–Hartley Act. Alternatively, Defendant contends that the Plan does not violate ERISA.

### II. *Defendants' Statute of Limitations Claim*

### A. *Waiver*

█ Defendants argue that Plaintiff's ERISA claims must fail because the statute of limitations has expired. Defendants raised this defense in the first Answer; however, the Amended Answer does not interpose this defense. Plaintiff argues that Defendants' failure to raise the defense in their Amended Answer constitutes a waiver. *See* Pl.'s Reply Mem. at 20. Generally, failure to plead an affirmative defense (*e.g.*, statute of limitations) constitutes a waiver of the defense. Fed.R.Civ.P. 8(c). Nevertheless, numerous courts have held that " '[a]bsent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time.' " *Steinberg v. Columbia Pictures Indus., Inc.*, 663 F.Supp. 706, 715 (S.D.N.Y.1987) (citations omitted); *see. e.g.*, *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984) (permitting party to raise statute of limitations defense in summary judgment motion for first time); *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797–98 (11th Cir.1989) (same); *G.D. v. Westmoreland School District*, 783 F.Supp. 1532, 1534 (D.N.H.1992) (same); *see generally Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir.1993); *Lucas v. United States*, 807 F.2d 414, 417–18 (5th Cir.1986); *Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982); *United States v. Krieger*, 773 F.Supp. 580, 583 (S.D.N.Y.1991); *MCI Telecommunications Corp. v. Ameri–Tel. Inc.*, 881 F.Supp. 1149, 1158 n. 21 (N.D.Ill.1995); *Boston Hides & Furs, Ltd. v. Sumitomo Bank. Ltd.*, 870 F.Supp. 1153, 1161 n. 6 (D.Mass.1994). Because Plaintiff has not demonstrated that it would be prejudiced if the Court considered Defendants' statute of limitations argument, the Court will not deem Defendants' failure to plead the statute of limitations defense as fatal to relying on the defense on summary judgment.[4]

---

4. Plaintiff contends that it "was clearly prejudiced" by Defendants' failure to plead the statute of limitations defense because this omission precluded her from conducting "discovery and demonstrat[ing] Defendants' concealment of their breach of duties." Pl.'s Reply Mem. at 21. ERISA tolls the applicable statute of limitations in circumstances where the defendant has acted to conceal breaches of its fiduciary violations. *See* 29 U.S.C. § 1113. Plaintiff's Complaint, however, contains *no* allegations that Defendants concealed any violations of their fiduciary duties. Thus, Plaintiff's claim of prejudice in this respect

Defendants argue that this action is untimely because: (1) a six-year statute of limitations governs Plaintiff's ERISA claims; (2) the statute of limitations began to run when the Plan was amended on October 1, 1976; (3) Plaintiff's time to file suit expired in 1982; and (4) Plaintiff brought this action on August 14, 1990, nearly eight years after the deadline to file the action. Defs.' Opp. Mem. at 11–17. In this case, Plaintiff brings claims of strict statutory violations by the Plan under ERISA and alleges that the trustees violated their fiduciary duties to the Plan. The statute of limitations for ERISA claims, as discussed below, depends upon the nature of the claims brought. Defendants, however, do not distinguish between the nature of Plaintiff's claims in their statute of limitations argument, but merely contend that *all* of the claims are untimely because the limitations period accrued on the date the Plan was amended. Because the accrual of the limitations period varies with the nature of the specific claims presented in an action, the Court addresses the timeliness of each of Plaintiff's claims individually.

### B. *Non-Fiduciary Claims*

Counts One and Four of the Complaint are brought under 29 U.S.C. § 1132 ("Section 1132"), ERISA's civil enforcement provision governing non-fiduciary duty claims.[5] ERISA does not prescribe a limitations period for Section 1132 actions. *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.1983), *cert. denied,* 464 U.S. 829, 104

S.Ct. 105, 78 L.Ed.2d 108 (1983). In the absence of a statutorily prescribed limitations period, the controlling limitations period is that of the most analogous state limitations statute. *Id.* (citing *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980)). The parties concede, *see* Defs.' Mem. at 14; Pl.'s Reply Mem. at 15–16, and the Court agrees, that the six-year statute of limitations set forth in Section 213 of New York Civil Practice Law and Rules governs Plaintiff's non-fiduciary ERISA claims. *See Miles,* 698 F.2d at 598 (applying six-year statute of limitations to non-fiduciary duty ERISA claims) (citing *Valle v. Joint Plumbing Indus. Bd.,* 623 F.2d 196, 202 n. 10 (2d Cir.1980)).

The limitations period for non-fiduciary claims begins to run "'when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries.'" *Id.* (quoting *Valle,* 623 F.2d at 202 n. 10) (emphasis in original); *Larsen v. NMU Pension Trust,* 902 F.2d 1069, 1073 (2d Cir.1990) (citation omitted). Plaintiff notified Defendants by letter dated March 9, 1989 that she believed that the social security offset in the Plan's Basic Formula violated ERISA.[6] The earliest date on which Defendants could have rendered a "clear repudiation" of Plaintiff's claim was April 6, 1989 when Defendant, through CIGNA, confirmed its calculation of Plaintiff's pension over her objection.[7] Therefore, the Court finds Plaintiff's statutory violation claim timely interposed.

Defendants attempt to distinguish *Miles* and *Larsen* from the present case by noting that "in each of these cases, the basis for the

---

is completely meritless. Plaintiff does not contend to be prejudiced in any other manner.

5. Section 1132 provides, in relevant part, that a Plan participant may bring a civil action:
to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; [and] ...
to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or ... to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....
29 U.S.C. § 1132(a).

6. Although Plaintiff sent the March 9, 1989 letter to CIGNA rather than to Defendants directly, Plaintiff did so at Defendants' direction. *See* p. 261, *supra.*

7. Plaintiff argues that the actual date of the accrual of this claim is July 1989—or sixty days after Defendants effectively denied Plaintiff's appeal by failing to render a decision on the appeal. *See* Pl.'s Reply Mem. at 17 (citing 29 C.F.R. §§ 2560.503–1(h)(1)(i) & (h)(4) (providing sixty day period for plan to issue a decision on appeals by beneficiaries)). The Court need not decide this issue because under either Plaintiff's theory or the analysis presented above, the non-fiduciary claims are timely.

claim was an omission by the fiduciary which was not discovered until around the time a claim for benefits was made." Defs.' Reply Mem. at 2. In essence, the plaintiffs in *Miles* and *Larsen* initiated claims based on the misapplication or misinterpretation of bargained-for-benefits under the plans, whereas Plaintiff here claims not that the Plan was misapplied in her case, but that the Plan itself violates ERISA on its face. Although the Court discerns the distinction, Defendants have not demonstrated that such a distinction influenced the Second Circuit's reasoning in these cases. Rather, the Second Circuit's rulings in these cases affirm the "clear repudiation" standard and do not indicate that this standard should vary depending upon the facts of a particular case or that it should be limited to cases involving the factual distinction Defendants raise. Significantly, Defendants fail to cite a single case in which the statute of limitations for a non-fiduciary duty ERISA claim accrued at the date of the plan's amendment or enactment.[8] In the face of clear Second Circuit authority, the Court declines to adopt a new legal standard requiring Plan participants and beneficiaries, likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential Plan errors and abuses.[9] Accordingly, Defendants' motion for summary judgment on Plaintiff's non-fiduciary duty claims is denied.

## C. *Fiduciary Duty Claim*

■ Count Two of the Complaint alleges that Defendants breached their fiduciary duties under ERISA by amending the Plan in 1976 to adopt a social security offset which violates ERISA. This claim is untimely.

ERISA bars actions for breaches of fiduciary duty

> *after the earlier of—*
>
> (1) six years after ... the date of the last action which constituted a part of the breach or violation, or ...
>
> (2) three years after the earliest date ... on which the plaintiff had actual knowledge of the breach or violation, or ... on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title....

29 U.S.C. § 1113 ("Section 1113") (emphasis added). Section 1113, thus, provides both an "absolute six-year bar," *Gluck,* 960 F.2d at 1177, and a "three-year limit, which prevents plaintiffs who know their rights from pausing too long in pressing their claims." *id.* (footnote omitted).[10] The Court finds that the amendment of the Plan to include the provision challenged by Count Two of the Complaint represents "the last action which constituted a part of the breach or violation" alleged by Plaintiff. By its very terms, Count Two alleges that the *"enactment"* of the social security offset provision constitutes Defendants' breach of fiduciary duties. *See* Complaint ¶ 38 (emphasis added).

■ Plaintiff's assertion that the six-year limitations period commences only after a litigant has "actual knowledge" of the breach of fiduciary duty, *see* Pl.'s Reply Mem. at 19, constitutes a misreading of Section 1113. The express language of the statute provides

8. Defendants' reliance upon *Gluck v. Unisys Corp.,* 960 F.2d 1168 (3d Cir.1992) for this proposition is unpersuasive. Contrary to Defendants' assertion, the *Gluck* court did not rule that the six-year statute of limitations for plaintiff's non-fiduciary duty claims commenced on the date the challenged provisions were added to the pension plan. Rather, the court concluded that the claims "accrued *at the earliest"* on the date of the plan's amendment. *Id.* at 1182 (emphasis added). The court, however, declined to determine when the claims actually accrued because they were, in any event, interposed within six years after the adoption of the amendment. *Id.*

9. The Court further notes that the application of the date of plan amendment as the date of accrual would unjustifiably preclude numerous potential ERISA claims. Under such an application, any beneficiary who commences employment more than six years after the date of a challenged amendment would automatically be precluded from asserting a Section 1132 ERISA claim. Although such a result would not be reached in this case, the Court refuses to adopt a rule which would lead to such an unacceptable scenario in the future.

10. If a claim is not filed within the time limit prescribed by § 1113(1), there is no need to undertake an analysis under § 1113(2).

that the six-year limitations period commences after the occurrence of the last action constituting a part of the breach (*e.g.*, the enactment of the amendment). The actual knowledge component triggers the shorter, three-year period. *See Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir.1995) (actual knowledge determination made in relation to three-year limit under § 1113(2), only after analysis of six-year limit under § 1113(1)).

Furthermore, the Court is not moved by Plaintiff's argument that in actions involving claims for breaches of fiduciary duty "there never is a statute of limitations bar, because each fresh injury *to the Plan* gives rise to a new cause of action." *Id.* at 18 (citing *Buccino v. Continental Assur. Co.*, 578 F.Supp. 1518, 1521 (S.D.N.Y.1983)) (emphasis in original). In *Buccino*, the case upon which Plaintiff relies for this proposition, the fiduciary breach involved the investment of pension fund assets in costly individual, rather than group, insurance policies. *Id.* at 1520. The court held that "as Fund fiduciaries [defendants] were under a continuing obligation to advise the Fund to divest itself of unlawful or imprudent investments." *Id.* at 1521. The court found that the defendants' failure to exercise their fiduciary duty "gave rise to a new cause of action each time the Fund was injured by its continued possession of individual policies, that is, each time it made a premium payment." *Id.* (citing *Morrissey v. Curran*, 567 F.2d 546 (2d Cir.1977)).

 This case does not present an ongoing injury as in the investment context of *Buccino*. Rather, the breach consists solely of the enactment of the Plan amendment itself.[11] *See International Union v. Murata Erie North Am., Inc.*, 980 F.2d 889, 899 (3d Cir.1992) (alleged breach of fiduciary duty

occurred on date plan was amended to include challenged provision); *Gluck*, 960 F.2d at 1178 (same); *see also Larson v. Northrop Corp.*, 21 F.3d 1164, 1171 (D.C.Cir.1994) (alleged breach of fiduciary duty occurred when defendant entered allegedly deficient annuity contract, not when plaintiff's benefits actually diminished by application of the contract). Accordingly, the Court finds that the 1976 amendment of the Plan to include the challenged social security offset provision represents the last action that constituted a part of Defendants' purported breach of fiduciary duties under Section 1104. Because Plaintiff interposed this claim *fourteen years* after the Plan's amendment, it is barred by the six-year statute of limitations contained in Section 1113.

## III. *Jurisdiction to Grant Relief Sought*

Defendant argues that the Court lacks jurisdiction under either the Taft–Hartley Act or ERISA to grant Plaintiff's request that it reform the Plan to bring it into conformity with ERISA. The Court agrees that it does not have jurisdiction under the Taft–Hartley Act to reform the Plan. As discussed below, the Court need not reach the issue of whether it has jurisdiction under ERISA to reform the Plan.

### A. *Reformation of Plan Under Taft–Hartley Act*

Count Three of the Complaint alleges that the social security offset provisions of the Plan "are not for the exclusive benefit of plan participants and beneficiaries" and, thus, violate Section 186(c)(5) of the Taft–Hartley Act, 29 U.S.C. § 186(c)(5).[12] Defendants argue, and Plaintiff now concedes, that this claim is "no longer viable," Pl.'s Reply Mem.

---

11. An ERISA litigant is not required "to await an actual injury or harm before the [breach of fiduciary duty] bec[omes] actionable." *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir.1990). "Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or participant." *Id.* In particular, 29 U.S.C. § 1104, which Plaintiff asserts in Count Two, permits "an ERISA plaintiff ... to prosecute a plan fiduciary who fails to perform for the exclusive benefit of participants and their beneficiaries

regardless of cost or loss to the participants and their beneficiaries." *Id.*

12. Section 186(c)(5) makes it unlawful for employers of employees covered by a collective-bargaining agreement to make payments to the employee's collective bargaining representative, but makes an exception to this rule if, among other conditions, the payments are made to "a trust fund established ... for the sole and exclusive benefit of the employees of such employers ..." 29 U.S.C. § 186(c)(5).

at 13 n. 10, due to the Supreme Court's ruling in *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 587–89, 113 S.Ct. 2252, 2257, 124 L.Ed.2d 522 (1993) (finding that courts lack authority to issue injunctions requiring trustees to administer trust assets in a manner consistent with Section 186(c)(5)). Accordingly, the Court grants Defendants summary judgment as to Count Three of the Complaint.

### B. Reformation of Plan Under ERISA

 Defendants argue that the Court lacks authority to impose a specific benefit accrual schedule upon the Plan. Defendants, however, do not dispute that the Court has the authority to order them to reform the Plan if it indeed violates ERISA's accrual provisions. In fact, such an equitable remedy is consistent with the remedial purposes of ERISA. Section 1132 allows plan participants, such as Plaintiff, to bring civil actions "to enjoin any act or practice which violates any provision of this subchapter ... or ... to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter...." 29 U.S.C. § 1132(a)(3). Plaintiff has not convinced the Court that the appropriate remedy for any violation in this case would be the *Court's* reformation of the Plan. Accordingly, the Court finds that, if the Plan's accrual provisions violate ERISA, then the Defendants should be given the opportunity to restructure the provisions so that they comply with the statute.[13] *Cf. Johnson v. Botica*, 537 F.2d 930, 937 (7th Cir.1976) (if plan provision had violated Taft–Hartley Act, 29 U.S.C. 186(e), "proper action would not have been to reform the trust instrument ... but rather to require the Trustees to formulate a substitute provision which would meet the statutory standards"). Because the Court has the authority to order reformation of the Plan (if it is found in violation of ERISA), Defen-

dants' motion for summary judgment on this basis is denied.

### IV. Plaintiff's Substantive Claims

#### A. Violation ·of ERISA Accrual Standards

##### 1. Violation Allegedly Conceded By Defendants

 Plaintiff contends that Defendants have conceded that the Plan violates ERISA's minimum accrual provisions. *See* Pl.'s Mem. at 3 ("defendants agreed that their Plan's benefit accrual formula does not comply with any of ERISA's minimum accrual standards") (citing Pauk Aff. ¶ 4, Ex. 12). The question of whether the Plan complies with the accrual provisions or ERISA, however, is clearly a legal issue.[14] Thus, even if Defendants have agreed that the Plan violates ERISA, the Court still must decide this issue. *See Weil v. Retirement Plan Admin. Comm. of the Terson Co.*, 913 F.2d 1045, 1049 (2d Cir.1990) (court accords no deference to plan administrator's determinations on questions of law), *aff'd in part and vacated in part on other grounds*, 933 F.2d 106 (2d Cir.1991); *Penn v. Howe–Baker Engineers*, 898 F.2d 1096, 1100 (5th Cir.1990) (court owes no deference to pension committee's conclusions of law concerning statutory interpretation of ERISA); *Holt v. Winpisinger*, 811 F.2d 1532, 1536 (D.C.Cir.1987) (court owes no deference to pension plan administrator's legal conclusions). The Court, therefore, rejects Plaintiff's contention that "[w]hat remains to be decided in this [case] is only the manner in which the Plan's formula must be reformed," Pl.'s Mem. at 3 (emphasis supplied), and considers the *legal* question of whether the Plan is valid under ERISA.

##### 2. Accrual Formula Violates ERISA

 Plaintiff claims that the Plan's

---

13. Having so ruled, the Court need not, and does not, reach the issue of whether it has the authority to reform a pension plan under ERISA.

14. It is well established that judicial admissions on questions of law have *no* legal effect. *See generally Chatton v. National Union Fire Ins. Co.*

*of Pittsburgh*, 10 Cal.App.4th 846, 13 Cal.Rptr.2d 318, 331 (1992); *Charter Bank v. Eckert*, 223 Ill.App.3d 918, 166 Ill.Dec. 282, 287, 585 N.E.2d 1304, 1309 (1992); *Fletcher v. Eagle River Memorial Hosp.*, 156 Wis.2d 165, 456 N.W.2d 788, 794 (1990); *Foster v. Bi–State Dev. Agency*, 668 S.W.2d 94, 96 (Mo.Ct.App.1984).

social security offset [15] contained in the Basic Formula violates Section 204(b)(1)(c) of ERISA, 29 U.S.C. § 1054(b)(1)(c) ("Section 1054"), by "backloading" her accrued benefits. Congress enacted Section 1054 "to prevent the employer from ... backloading benefits (that is, making benefits accrue very slowly until the employee is near retirement age) so that the employee's pension rights, even though vested after 10 years, have very little value until he [or she] has completed a much longer period of service." *Jones v. UOP*, 16 F.3d 141, 143 (7th Cir.1994) (citing Jeffrey D. Mamorsky, *Employee Benefits Handbook* § 18.16 (3d ed.1992)). Section 1054 provides three accrual tests, which specify the minimum rate at which retirement benefits of defined benefit plans must accrue. *Hoover v. Cumberland, Md. Area Teamsters Pension Fund*, 756 F.2d 977, 982 n. 10 (3d Cir.1985). A defined benefit plan must satisfy at least *one* of these tests. *Id.;* I.R.S. Reg. § 1.411(b)–1(a)(1).

The first test requires that, upon retirement, a participant be entitled to no less than:

> 3 percent of the normal retirement benefit to which he would be entitled at the normal retirement age if he commenced participation at the earliest possible entry age under the plan and served continuously until the earlier of age 65 or the normal retirement age specified under the plan, multiplied by ... the number of years (not in excess of 331/3) of his participation in the plan.

29 U.S.C. § 1054(b)(1)(A) ("Three Percent Rule"). The second test is satisfied when in any given year under the plan:

> the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 1331/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year.

29 U.S.C. § 1054(b)(1)(B) ("1331/3 Percent Rule"). Finally, the third accrual test is met when the benefits to which a retiree is entitled:

> is not less than a fraction of the annual benefit commencing at normal retirement age to which he would be entitled under the plan ... determined as if he had attained normal retirement age.... Such fraction shall be a fraction, not exceeding 1, the numerator of which is the total number of his years of participation in the plan ... and the denominator of which is the total number of years he would have participated in the plan if he separated from the service at the normal retirement age.

29 U.S.C. § 1054(b)(1)(C) ("Fractional Rule").[16]

Under the Plan's Basic Formula, a pensioner's monthly pension equals the greater of: (1) [ (1/12) × (.45 × (Final Earnings)) × (years of participation / 20) ]—[Pensioner's Social Security Benefit]; or (2) $2.00 × (the Participant's full years of Credited Service up to a maximum of 20 years). Complaint ¶ 13; Seide Aff. Ex. F at 21 (copy of the Plan). In her moving papers, Plaintiff argues that under the Basic Formula, she "accrued *zero* benefits during the first eight years of employment, due entirely to the application of [the] Social Security offset." Pl.'s Mem. at 11 (emphasis in original). Plaintiff contends that the formula must violate the Three Percent and the Fractional Rules "because the application of a 'hard' Social Security offset causes accrual not to be equal over all years of employment." *Id.* at 11–12. Plaintiff also argues that the Plan violates the 1331/3 Rule "because accrual for early years is equal to zero, and zero is infinitely smaller than any later accrual

---

**15.** "Congress, in adopting ERISA, expressly preserved the option of integration of social security benefits into the income streams available under private pension plans." *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 978 (4th Cir. 1987) (citations omitted)

**16.** For a discussion of ERISA's accrual requirements, *see generally* Henry H. Perritt, Jr., *Employee Benefits Claims Law and Practice* § 5.15, at 258–62 (1990).

greater than zero." *Id.* at 12. The Court finds that Plaintiff's argument is only partially correct.

The Plan's accrual provisions compute benefits based on the larger of: (1) an equation based on "Final Earnings" ("Final Earnings Equation") *or* (2) two dollars times the number of years of participation in the Plan ("Two Dollar Equation"). During the first eight years of her employment, the Two Dollar Equation provided greater benefits than the Final Earnings Equation, thereby allowing Plaintiff to earn *some* benefits. Thus, Plaintiff did not accrue "zero" benefits during the first eight years of her employment. The Court, nevertheless, finds that the Basic Formula violates ERISA.

During the pendency of Plaintiff's motion, the Court ordered the parties to submit additional briefing with calculations demonstrating the Plan's compliance or noncompliance with ERISA. Plaintiff submitted extensive calculations demonstrating the Plan's failure to meet ERISA's accrual provisions. *See* Pauk Supp. Aff. ¶¶ 31–53. Defendants agreed that "Plaintiff's benefit did not accrue *in compliance*" with ERISA's accrual provisions, Defs.' Supp. Mem. at 3, yet sought to minimize any violation as "purely academic," *id.* at 4.

### a. Basic *Formula* Violates Three Percent Rule

The Basic Formula violates the Three Percent Rule. That rule is satisfied if the participant accrues at least three percent of his/her pension in any given year. Substituting Plaintiff's Normal Earnings and Social Security Benefit [17] into the Basic Formula, the Court finds that in the eighth year of her participation, for example, Plaintiff accrued two dollars in pension benefits, less than the required three percent of Plaintiff's normal retirement benefit. *See* Pauk Supp. Aff. ¶¶ 26, 31, 39. Therefore, the Basic Formula does not satisfy the Three Percent Rule.

### b. Basic *Formula Violates* 133 1/3 Percent Rule

The Basic Formula also violates the 133 1/3 Percent Rule. That rule requires that the amount of plan benefits accruable in any given year not exceed 133 1/3 percent of the annual accruable benefit in any prior year of participation. Once again, in the eighth year of her participation, Plaintiff accrued two dollars in pension benefits. In the last four years of her participation, Plaintiff accrued $16.08 in pension benefits per year. *See* Pauk Supp. Aff. ¶¶ 31, 43. As a result, Plaintiff's rate of accrual in any of her last four years of participation is 800% of the rate in year eight. Accordingly, the Plan exceeds the maximum permissible variance under the 133 1/3 Percent Rule.

### c. Basic *Formula Violates* Fractional Rule

The Basic Formula violates the Fractional Rule. The Fractional Rule is satisfied if the accrued benefit as of a given participation year is not less than the following: Normal Retirement Benefit × (Actual Years of Participation/Years of Service from Entry to Normal Retirement Age). By the ninth year of Plaintiff's participation, for example, Plaintiff accrued $18.00 in pension benefits. *See* Pauk Supp. Aff. ¶¶ 31. Substituting the appropriate numbers in the formula for year nine ($185.86 × (9/20) = $83.64), Plaintiff accrued less than the benefit that should have accrued under the Fractional Rule. Accordingly, the Basic Formula fails to satisfy any of the three alternative formulas required under Section 1054. The Court grants summary judgment to Plaintiff as to Count One.

Despite the complexity of the calculations and formulas under the Plan and the tests of Section 1054, it is clear that the Plan violates ERISA. Although Defendants downplay any violation of these accrual requirements as "purely academic," the Court does not take Congress' efforts to prevent "backloading" of pension plan benefits lightly. In light of the

---

**17.** The parties disagree over the amount of Social Security Benefit to apply. Plaintiff contends that the actual Social Security Benefit is $135.68. *See* Pauk Supp. Aff. ¶ 24. Defendants agree with Plaintiff's calculations, but argue that Defendants are entitled to apply an estimated Social Security

Benefit ($167.70), rather than an amount based upon actual social security wage history. *See* Defs.' Supp. Mem. at 2–3. The Court finds that the Plan formula violates ERISA regardless of whether an actual or estimated social security wage history is applied.

clear violation of ERISA, the Court is dismayed by Defendants' inaction in reforming the Plan to comply with ERISA, particularly given Defendants' contentions that "[t]here are an infinite number of benefit formulas that can be adopted that satisfy ERISA's benefit accrual requirements", Defs.' Opp. Mem. at 21, and that "the Plan's formula could be revised retroactive to October 1, 1976 in a way that would clearly satisfy ERISA's accrual rates ..." *Id.* at 22. Although the Court declines Plaintiff's request to impose the revised Plan proposed by Plaintiff, the Court orders Defendants to reform the Plan consistent with the requirements of ERISA retroactive to October 1, 1976.[18]

### B. *Recalculation of Plaintiff's Pension Benefits*

In addition to a ruling on the legality of the Plan, Plaintiff further seeks a declaration by the Court that Defendants underpaid Plaintiff even under the terms of the current Plan. Plaintiff contends that Defendants' application of an estimated social security wage history rather than an actual social security wage history in the Basic Formula resulted in underpayment to Plaintiff. Defendants respond that they were entitled to apply an estimated social security wage history. Plaintiff and Defendants agree that if an actual social security wage history were applied, Plaintiff would be entitled to further benefits. *See* Defs.' Supp. Mem. at 3. In light of the Court's holding that the Plan itself violates ERISA and the Court's order to reform the Plan retroactively, the Court need not address whether Plaintiff was entitled to increased benefits under the terms of the violative Plan. After such time as the Plan is reformed to comply with ERISA, the Trustees shall calculate Plaintiff's benefits under the newly revised Plan to determine whether Plaintiff is entitled to benefits in excess of payments previously received and notify Plaintiff of that determination. Thus, Plaintiff's motion for declaratory relief is denied in this respect.

### C. *Plaintiff's Claim for Additional Interest*

In July 1989, Defendants paid Plaintiff $1,019.36 to correct an unrelated benefit underpayment. In September 1989, Defendants sent Plaintiff $462.79, an award of five percent interest on the underpayment. Plaintiff now seeks the difference between the five percent interest paid by Defendant in 1989 and the higher of interest actually earned by the Plan or the legal rate of interest. *See* Complaint at 15. Plaintiff suggests the application of the nine percent rate prescribed for pre-judgment interest under New York's CPLR § 5004.

As an initial matter, the Court must determine whether ERISA's civil enforcement provisions sanction the requested relief.[19] Of ERISA's six civil enforcement provisions, only two, Section 1132(a)(1)(B)[20] and Section 1132(a)(3)(B)[21], arguably permit an independent claim for interest. With regard to Section 1132(a)(3)(B), the Supreme Court, in

---

**18.** The Court declines Plaintiff's request to order Defendants "to provide notice to all affected parties of the Court's decision, including participants, beneficiaries, their estates, the IRS, and the United States Department of Labor." Pl.'s Mem. at 24. Plaintiff did not file this suit as a class action and has never attempted to certify a class. Plaintiff has failed to cite relevant authority to support the proposition that the Court may confer relief upon non-parties. The Court notes, however, that Defendants are obligated under ERISA, 29 U.S.C. § 1024(b)(1), to notify all participants and beneficiaries of any "material modification in the terms of the plan." *See* 29 U.S.C. § 1022(a)(1), 1024(b)(1).

**19.** Plaintiff's Complaint fails to specify under which provision of Section 1132 she pursues her claim for interest.

**20.** Section 1132(a)(1)(B) provides, in pertinent part:

"A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan...."
29 U.S.C. § 1132(a)(1)(B).

**21.** Section 1132(a)(3) provides, in pertinent part:

A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
29 U.S.C. § 1132(a)(3).

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 248–49, 113 S.Ct. 2063, 2063, 124 L.Ed.2d 161 (1993), held that "other appropriate equitable relief" under this provision encompasses only those remedies typically available in equity (*e.g.*, injunction, mandamus, and restitution) and not compensatory damages. *See also Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir.1993) ("Money damages are generally unavailable under" Section 1132(a)(3)). Because the compensatory nature of Plaintiff's claim precludes relief under Section 1132(a)(3)(B), the Court construes this claim as having been brought under Section 1132(a)(1)(B). *See, e.g., Jordan v. Retirement Comm. of the Contributory Defined Benefit Retirement Plan at Rensselaer Polytechnic Inst.*, 875 F.Supp. 125, 127 (N.D.N.Y. 1995) (holding that plaintiff, who "has coyly avoided identifying that section of ERISA under which he pursues his claim" for additional interest on a plan's award of underpayments, "can obtain the relief he seeks, if at all, only under [Section 1132(a)(1)(B) ].").

*Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), casts doubt on the viability of an independent claim for interest under Section 1132(a)(1)(B). In *Russell*, the Supreme Court held that an individual beneficiary cannot recover extra-contractual damages "caused by improper or untimely processing of benefit claims" under Section 409(a) of ERISA. *Id.* at 134–35, 105 S.Ct. at 3086. Although Plaintiff's claim does not arise under Section 409(a), the *Russell* Court also noted, in *dicta*, that:

> the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan— § 502(a)(1)(B) ... says nothing about the recovery of extracontractual damages, or

about the possible consequences of delay in the plan administrators' processing of a disputed claim. Thus, there really is nothing at all in the statutory text to support the conclusion that such a delay gives rise to a private right of action for compensatory or punitive relief.

*Id.* at 144, 105 S.Ct. at 3091.

In the wake of *Russell*, two courts have addressed whether a pension plan beneficiary may recover interest on benefits initially withheld or delayed but subsequently paid prior to the initiation of a lawsuit.[22] In *Scott v. Central States, Southeast and Southwest Areas Pension Plan*, 727 F.Supp. 1095, 1095–96 (E.D.Mich.1989), the defendant administratively approved plaintiff's claim for pension benefits twelve years after plaintiff submitted the claim. -Plaintiff sued, pursuant to Section 1132(a)(3), for the interest that accrued during the delay period. *Id.* at 1096. The court concluded that, since the pension plan did not prescribe interest payments for delays in benefit payments, the claim for interest was extracontractual. *Id.* at 1098. The court, relying on *Russell* and subsequent cases interpreting *Russell* in other contexts,[23] held that extracontractual damages are not available under ERISA. *Id.*

The court in *Hizer v. General Motors Corp.*, 888 F.Supp. 1453, 1461–62 (S.D.Ind. 1995), reached the opposite result. In *Hizer*, the defendants denied plaintiff's initial claim for death benefits under a pension plan. *Id.* at 1457. Four years later, defendants reviewed the initial denial and paid plaintiff the benefits plus interest. *Id.* Plaintiff, claiming the interest rate applied was insufficient, sued for additional interest. *Id.* Just as in *Scott*, the pension plan itself did not provide for interest payments for withheld or delayed

---

**22.** The same issue arose in a third case, *Jordan v. Retirement Comm. of the Contributory Defined Benefit Retirement Plan at Rensselaer Polytechnic Inst.*, 875 F.Supp. 125 (N.D.N.Y.1995). The court in *Jordan*, however, did not address the viability of an extracontractual claim for additional interest under ERISA, instead dismissing the claim on other grounds. See discussion infra p. 272.

**23.** Specifically, the court relied on *Johnson v. District 2, Marine Engineers Beneficial Assoc.–Associated Maritime Officers Medical Plan*, 857

F.2d 514 (9th Cir.1988), and *International Union UAW Local 91 v. Park–Ohio Ind., Inc.*, Nos. 88 Civ. 3145, 88 Civ. 3147, 1989 WL 63871 (6th Cir. June 15, 1989). In *Johnson*, the Ninth Circuit held that a beneficiary could not recover for extracontractual damages against a fiduciary under Section 1132(a)(3) for improper processing of benefit claims. 857 F.2d at 518. In *International Union*, the Sixth Circuit held that neither Section 1132(a)(1)(B) nor Section 1132(a)(3) provide for extracontractual compensatory damages. 1989 WL 63871, at *7.

benefits payments. *Id.* The court dismissed the *Scott* decision as "inconsistent with Seventh Circuit decisions governing the closely related matter of prejudgment interest." *Id.* at 1460–61. The court relied upon Seventh Circuit decisions which have "established the presumption that prejudgment interest should ordinarily be awarded in cases seeking payment of ERISA benefits." *Id.* at 1461. The court then concluded that there appears to be "no rationale for drawing a distinction between prejudgment interest and interest on delayed payment." *Id.*

■ This Court disagrees with the reasoning in *Hizer* and follows the holding in *Scott* which finds claims for extracontractual damages, such as Plaintiff's, as precluded under ERISA. The Court finds a clear distinction between an award of prejudgment interest and an independent judgment for interest on a delayed payment.[24] *See generally Cefali v. Buffalo Brass Co.,* 748 F.Supp. 1011, 1025 (W.D.N.Y.1990) (noting distinction between award of prejudgment interest on damages recovered and independent action solely to recover extracontractual damages). A court can only award prejudgment interest upon finding that a defendant violated a provision of ERISA for which Congress authorized relief. In contradistinction, in order to award damages on an independent claim for extracontractual interest, the Court must create a cause of action which Congress did not provide for under ERISA. As the Supreme Court stated in *Russell,* "[t]he six carefully integrated civil enforcement provisions found in [Section 1132(a) ] of the statute as finally enacted, however, provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." 473 U.S. at 146, 105 S.Ct. at 3092. As to extracontractual interest, this Court refuses to find that a right exists under ERISA without instruction

from Congress to do so, particularly in light of the Supreme Court's suggestion in *Russell* that no such right exists.

■ Plaintiff's extracontractual claim also fails on the merits. Plaintiff's claim for additional interest necessarily challenges the Board of Trustees' interpretation and administration of the terms of the Plan. Under the Plan, the Board of Trustees has discretionary authority to determine eligibility for benefits.[25] Thus, even if ERISA affords relief for independent claims of interest on paid benefits, the Court must still scrutinize the Board of Trustees' decision to award five percent interest under the deferential arbitrary and capricious standard as set forth in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989) (holding that arbitrary and capricious standard applies to Section 1132(a)(1)(B) denial of-benefits claims if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). *See also Jordan,* 875 F.Supp. at 128 (reviewing plan's application of interest to underpayments under arbitrary and capricious standard).

The Plan here does not prescribe any method of calculating interest on withheld benefits, nor does it require such interest payments to be made. ERISA is also silent as to the payment of interest on withheld or delayed benefit payments. Under similar circumstances, the court in *Scott* found that the trustees' decision to deny a beneficiary any interest on delayed benefit payments could not be considered unreasonable under any standard of review. 727 F.Supp. at 1098. This Court agrees that, in light of the fact that the Board of Trustees had no obligation under either ERISA or the terms of the Plan to award interest for withheld benefits, the Board of Trustees did not act arbitrarily or

---

**24.** The Court notes that the Second Circuit does not adhere to the Seventh Circuit's presumption of awarding prejudgment interest in ERISA cases. *See Mendez v. Teachers Ins. and Annuity Assoc. and College Retirement Equities Fund,* 982 F.2d 783, 790 (2d Cir.1992) (holding that a court may, in its discretion, award prejudgment interest in ERISA cases where appropriate, but "it is not axiomatic that such interest should be award-

ed simply because ... the prevailing party has demonstrated entitlement to the funds.")

**25.** In order to submit a claim for benefits under the Plan, a participant must authorize the Board of Trustees "to conduct such examinations as may be necessary to determine the validity of the claim ..." Graw Aff., Ex. F at 51 (Copy of the Plan).

capriciously by awarding Plaintiff five percent interest. Accordingly, the Court denies summary judgment for Plaintiff and grants summary judgment to Defendants as to Count Four.

## CONCLUSION

For the foregoing reasons, the Court hereby orders that:

(1) Plaintiff's motion for summary judgment is granted as to Count One;

(2) Defendants reform the Plan by May 15, 1997, retroactive to October 1, 1976, so as to comply with this Opinion and Order;

(3) upon the completion of the ordered reformation, Defendants must recalculate Plaintiff's pension benefits under the reformed Plan to determine whether Plaintiff is entitled to further benefits in excess of those previously received;

(4) Defendants must notify Plaintiff of Defendants' recalculation of Plaintiff's pension benefits under the reformed Plan by June 15, 1997;

(5) Plaintiff's motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted as to Count Two;

(6) Plaintiff's motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted as to Count Three:

(7) Plaintiff's motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted as to Count Four.

It is So Ordered.